IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOHN BRIAN, | ) | |
| | ) | |
| Plaintiff, | ) | 8:05CV484 |
| | ) | |
| vs. | ) | |
| | ) | |
| WESTSIDE COMMUNITY SCHOOL | ) | MEMORANDUM AND ORDER |
| DISTRICT, A Political Subdivision, BOB | ) | |
| REZNICEK, ASSISTANT | ) | |
| PRINCIPAL/ATHLETIC DIRECTOR, | ) | |
| Individually and in his Official Capacity, | ) | |
| JOHN CROOK, PRINCIPAL, | ) | |
| Individually and in his Official Capacity, | ) | |
| | ) | |
| Defendants. | ) | |

Before the court is the defendants' motion to dismiss the plaintiff's Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) (filing no. 15).[1] The court, having considered the motion, the plaintiff's response, the defendants' reply, and the relevant materials and law, now determines that the defendants' motion should be denied, in part, and granted, in part.

**Background**

Plaintiff John Brian ("Brian") is a New Zealand native who is employed as a tenured teacher (under a written contract) by the defendant Westside Community School District ("Westside"). See Amended Complaint at ¶ 5. Brian teaches World History and has been employed by Westside since the 1999-2000 school year. *Id.* He previously student-taught

---

[1] Defendants had moved to dismiss the plaintiff's original complaint pursuant to Fed.R.Civ.P. 12(b)(6). See Filing No. 6. However, the plaintiff, rather than opposing the defendants' motion, responded by filing an Amended Complaint. See Filing No. 11. The defendants then filed this motion to dismiss the plaintiff's Amended Complaint. See Filing No. 15. Consequently, the defendants' motion to dismiss (Filing No. 6) the plaintiff's original complaint is now rendered moot.

at the Middle School and the High School during the 1998-1999 school year. *Id.* Brian taught at the Middle School the first year he was employed by Westside. *Id.* He then moved to the High School where he continues to teach. *Id.* Brian has an extensive background in coaching athletics and his experience includes, among other things, assisting as coach for Creighton University's Division I Women's Soccer Team and coaching in the United States Olympic Development Program. *Id.*

Westside is a duly organized political subdivision under the laws of the State of Nebraska and operates Westside High School (hereinafter the "High School") located in Omaha, Nebraska. Westside has policies and procedures which operate as terms and conditions of employment for its teachers, including Brian. Id at ¶ 6. Westside has entered into Collective Bargaining Agreements with the Westside Education Association, which also operate as terms and conditions of employment for its teachers, including Brian. *Id.*

Defendant Bob Reznicek ("Reznicek"), during the relevant time, was the Assistant Principal of the High School and Westside's Athletic Director. *Id.* at ¶¶ 7-8. He was responsible for the supervision and evaluations of the staff in Physical Education and Social Studies, which included supervising Brian. *Id.* Reznicek was also responsible for the coordination of the athletic program and evaluation of the coaching staff. *Id.* Defendant John Crook ("Crook"), during the relevant time, was the Principal of the High School and was responsible for all instructional and non-instructional activities at the High School and for the supervision and evaluation of the staff, including Reznicek and Brian. *Id.*

Brian alleges that he was encouraged by former Westside Community Board

2

Member, Liz Karnes, to teach and coach at Westside. *Id.* at ¶ 11. Based upon the member's encouragement, Brian alleges, he applied for a student-teacher position and subsequently for a teaching position with Westside. *Id.* According to Brian, Reznicek told him, sometime in the fall of 1998, that he, "not the parents, hired the coaches at the High School and [that] he didn't appreciate how his selection was handled." *Id.*

Brian alleges that he assisted coaching the girl's High School soccer team during the 1999 and 2000 spring seasons. *Id.* at ¶¶ 12-13. He alleges that, during the 2000-2001 school year, he assisted coaching the boy's High School soccer team. *Id.* According to Brian, at the beginning of the 2002 spring season, Reznicek told him that "he would keep an eye on him." *Id.*

Brian claims that, on or about August 9, 2002, Reznicek informed him that he would continue to observe him. *Id.* at ¶¶ 14-16. According to Brian, Reznicek and Crook subsequently placed him on performance probation without explanation or allowing him an opportunity to be heard. *Id.* Brian alleges that during the 2002-2003 school year, defendants prohibited him from coaching and denied him, among other things, a teaching salary increase. *Id.* Brian alleges that Reznicek told him: "[t]he official reason that you will not be allowed to coach is so you can spend more time in the classroom. The unofficial reason is that you have embarrassed me." *Id.* Brian alleges that, prior to being placed on probation, he had received excellent performance evaluations and had never been informed of any job performance problems. *Id.*

During the fall of 2002, Brian alleges that he reviewed his personnel file and found an evaluation that he had never seen or signed. *Id.* at ¶¶ 17-21. Brian alleges that,

3

despite completing his performance probation successfully, Reznicek and Crook denied him the opportunity to coach in August 2003, maintained his performance probation status, and required him to have a teaching assistance team for the 2003-2004 school year.  *Id.*  Brian alleges that, in December of 2003, the assistance team met with him and Reznicek and recommended that he be allowed to coach and be removed from performance probation.  *Id.*  However, Brian alleges that Reznicek and Crook refused to comply with that recommendation.  *Id.*  Brian specifically alleges that, in February 2004, Reznicek informed him that he was prohibited from coaching in the spring of 2004 and that he would remain on performance probation.  *Id.*  Brian claims that he asked if his probation was related to his coaching abilities and if it was permanent, if he could volunteer his time to a program, and if he could coach with another school.  *Id.*  Brian alleges that instead of receiving an answer, he was accused by Reznicek and Crook of sexually harassing a fellow female employee.  *Id.*  Brian claims that the fellow employee later apologized to him for the accusation made by these individuals.  *Id.*

Brian alleges that from January through March 2004, Reznicek interfered with his relationship with his students by removing them from class and interrogating them about him.  *Id.* at ¶ 22.  Brian claims that Reznicek made untruthful comments about his professional performance to students, as well as to some of their parents.  *Id.*  Brian alleges that Reznicek's actions were approved by Crook and Westside.  *Id.*

Brian claims that he continued to be on performance probation during the rest of the 2004 school year and that he was deprived of an opportunity to coach in the spring of 2004.  *Id.* at ¶¶ 23-25.  However, Brian alleges that Westside renewed his employment

contract for the 2004-2005 school year. *Id.* Plaintiff alleges that, during that year, he requested a variety of opportunities to coach, both paid and volunteered, but defendants denied his requests. *Id.* Brian alleges that defendants also denied his requests to coach during the 2005-2006 school year. *Id.* Brian further alleges that Reznicek told other schools, when they inquired about his coaching abilities, that he was not qualified to coach. *Id.* at ¶ 28.

Brian alleges that Westside's officials have continually referred to his New Zealand speech and mannerisms as rude and sarcastic, and that they have not made any attempts to become aware of his cultural background or the impact of that in his speech and mannerisms. *Id.* at ¶¶ 26-27. Brian alleges that defendants have treated him in a discriminatory or unequal manner from other similarly situated American teachers and professional staff by refusing to allow him to coach. *Id.*

Brian further alleges that the actions of Reznicek and Crook, namely, of accusing him of sexually harassing a fellow employee, putting him on probation for three years, placing a non-favorable evaluation in his file, making false comments about his professional performance to students, parents, and other schools that sought to give him additional work opportunities, were committed without justification and in furtherance of their own interests and contrary to the legitimate interest of Westside. *Id.* at ¶¶ 32, 33 and 45. Brian alleges that Reznicek and Crook committed these acts knowing that they were against Westside's policies and procedures and against the collective bargaining agreement, which also regulates the terms and conditions of Brian's employment contract with Westside. *Id.*

Brian has brought this lawsuit claiming that the defendants' actions constitute a violation of his civil rights. Specifically, he brings a claim against defendants under 42 U.S.C. § 1983 claiming that they violated his due process and equal protection rights. Brian also has brought a claim against Reznicek for intentional interference with business relationships.[2] Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) arguing that the plaintiff's amended complaint fails to state claims upon which relief could be granted. The court now turns to the examination of the defendants' motion.

**Rule 12(b)(6) Standard**

For the court to dismiss a complaint under Rule 12(b)(6), the court considers all the facts alleged in the complaint as true, and construes the pleadings in the light most favorable to the plaintiff. *Schmedding v. Tnemec Co.,* 187 F.3d 862, 864 (8th Cir. 1999). A complaint is successfully challenged if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* Relief is granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Id.* However, the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal. *Briehl v. Gen. Motors Corp.,* 172 F.3d 623, 627 (8th Cir. 1999).

**Analysis**

***Claims under 42 U.S.C. § 1983***

---

[2] Brian also asserted a claim against defendants for violation of his civil rights under Nebraska law. However, in his brief in opposition to defendants' motion to dismiss, Brian concedes that he cannot bring this claim against the defendants. See Filing No. 17, Brief in Opposition to Defendants' Motion to Dismiss. Thus, the court will dismiss this claim.

Section 1983 provides a mechanism for seeking redress for alleged deprivations of federal constitutional and federal statutory rights by persons acting under color of state law. *Roe v. Humke,* 128 F.3d 1213, 1215 (8th Cir. 1997). To establish a prima facie case, plaintiff must prove two elements: (1) the action occurred "under color of law," and (2) the action is a deprivation of a constitutional right or a federal statutory right. *Id.* The Eighth Circuit has observed that the color of state law element of § 1983 suits requires that the defendant "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with authority of state law.'" *Id.* (citations omitted). In order to determine if a public employee is acting under color of state law, the court must examine the nature of the officer's conduct and its relationship to the performance of the officer's statutory duties. *Id.* "It is clear that under 'color' of law means under 'pretense' of law." *Id.* "Thus, acts of officers in the ambit of their personal pursuits are plainly excluded." *Id.*

A political subdivision may not generally be held vicariously liable under § 1983 for the unconstitutional acts of its employees. See *Monell v. Department of Soc. Services,* 436 U.S. 658, 694 (1978). For a political subdivision to be liable under § 1983, a municipality policy or custom of the political subdivision must have caused the constitutional injury. *Owen v. City of Independence,* 445 U.S. 622, 657 (1980). "'Policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge,* 165 F.3d 1197, 1204 (8th Cir. 1999) (citations omitted). However, a single decision can reflect an official policy so long as the decision-maker has the discretionary, policymaking authority necessary to hold the

municipality liable for his decision. *Buzek v. County of Sanders,* 972 F.2d 992, 996 (8th Cir. 1992). A "custom" initially requires "the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees . . ." *Mettler,* 165 F.3d at 1204.

Under § 1983, public employees may be sued officially, individually or both. *Johnson v. Outboard Marine Corp.,* 172 F.3d 531, 535 (8th Cir. 1999). However, a § 1983 suit against an employee in his official capacity is deemed to be a suit against the employer only. *Id.*

In this case, Brian alleges, among other things, that the defendants Reznicek and Crook – who are officers of Westside (a political subdivision) – acting in their official and individual capacity engaged in repetitive or continuous misconduct, which consisted of: (1) placing him on probation for three years; (2) depriving him of opportunities to seek additional duties, i.e., coaching; and (3) falsely accusing him of sexually harassing another employee. For purposes of this motion, the court determines that plaintiff has properly alleged a continuing and persistent pattern of misconduct that could make Westside, a political subdivision, liable for a municipal policy or custom. See *Mettler,* 165 F.3d at 1204. Furthermore, the court also determines that plaintiff has properly alleged that these defendants were acting under color of state law. Thus, the court now turns to the question of whether plaintiff properly makes a claim of deprivation of a constitutional right. As stated above, Brian claims that defendants violated his procedural and substantive due process rights as well as his equal protection rights.

*A. Procedural Due Process*

A government employee is entitled to procedural due process only when he has been deprived of a constitutionally protected liberty or property interest. See *Board of Regents v. Roth,* 408 U.S. 564, 570-71 (1972). Once a protected liberty or property interest is identified, the court then must determine the procedures that must be followed in depriving someone of that interest. *Mathews v. Eldridge,* 424 U.S. 319, 332, 335, 348 (1976). A person with a liberty or property interest, however, is entitled to at least notice and an opportunity to be heard before being deprived of that interest. *Id.*

In this case, Brian alleges that he has a liberty interest in his name and reputation, and also a property interest in seeking and obtaining salary increases. The court now turns to the examination of each of these claims.

*Procedural Due Process – Liberty Interest*

An employee's liberty interests are implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges. *Shands v. Kennett,* 993 F.2d 1337, 1347 (8th Cir. 1993). The requisite stigma has generally been found when an employer has accused an employee of dishonesty, immorality, criminality, racism, and the like. *Id.* The due process clause of the Fourteenth Amendment requires that the government afford a person notice and hearing if the government imposes a "'stigma or other disability' that damages a person's standing in the community or forecloses a person's 'freedom to take advantage of other employment opportunities.'" *Raposa v. Meade School District 46-1,* 790 F.2d 1349, 1354 (8th Cir. 1986) (quoting *Roth,* 408 U.S. at 573).

In this case, Brian alleges that defendants damaged his good name and reputation

9

as a teacher by falsely accusing him of sexually harassing a fellow employee and by making untruthful comments about his professional performance to students, to parents, and to other schools that sought to give him additional work or coaching opportunities. Furthermore, he alleges that when defendants made the sexual harassment allegations against him, they did not provide him with an opportunity to be heard on the matter. The court determines that defendants' allegations of sexual harassment are sufficiently stigmatizing to a teacher's reputation and good name in the community to implicate a liberty interest. A teacher who allegedly is placed with this stigma, resulting in the loss of employment opportunities, is entitled to a hearing. See *Paul v. Davis,* 424 U.S. 693, 705 (1976) (a notice and a hearing are required when state action "has operated to bestow [stigma] with an attendant foreclosure from other employment opportunity."). Viewing the facts in the light most favorable to the plaintiff, the court determines that Brian has properly alleged that defendants deprived him of a liberty interest in violation of his due process rights. As a result, defendants' motion to dismiss, with respect to this claim, should be denied.

*Procedural Due Process – Property Interest*

An employee has a property interest in his employment when he has a legitimate claim of entitlement to continued employment. *Roth,* 408 U.S. at 577. The existence of a property interest is determined with reference to state law. *Bishop v. Wood,* 426 U.S. 341, 344 (1976). Typically, this interest arises from contractual or statutory limitations on the employer's ability to terminate an employee. *Id.* A property interest in employment can also be created by implied contract, arising out of customs, practices and de facto policies.

*Perry v. Sindermann,* 408 U.S. 593, 601-02 (1972).  When such a property interest exists, the employee is entitled to a notice and a hearing or some related form of due process before being deprived of the interest.  See *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985).

Here, it is undisputed that Brian has a contractual relationship with Westside.  He is a tenured teacher, under contract, and continues to teach at Westside.  Thus, Brian has properly alleged that he has a property interest in his employment.  Brian also alleges that, under the terms of the collective bargaining agreement, which also regulates the terms and conditions of his employment, he is entitled to participate in extracurricular activities to obtain salary increases.  Thus, Brian has also properly alleged that he has a right to salary increases.

Brian alleges that he was put on probation for three years without a reason, that an evaluation was placed in his file without his knowledge, and that, because of these reasons, he was prevented from obtaining salary increases.  Brian also alleges that he did not receive a hearing with respect to his three-year probation.  In fact, Brian alleges that, when he questioned whether or not his probation was permanent, defendants addressed his inquiry by accusing him of sexually harassing another employee.  Thus, Brian has properly alleged that defendants deprived him of a property interest in violation of his due process rights.

Defendants contend that their motion should be granted because Brian does not have a property interest in coaching.  They rely on *Neal v. School District of York,* 205 Neb. 558, 288 N.W.2d 725 (1980).  In *Neal,* the Nebraska Supreme Court held that the provisions of tenure law did not apply to coaching duties.  *Neal,* 205 Neb. at 561.

However, this case, unlike *Neal*, involves a claim for a right to seek and assume other duties besides coaching under the terms of an employment contract and a collective bargaining agreement. As Brian points out in his brief, his claim is not a claim only for the right to coach or a contract to coach. See Filing No. 17, Brief in Opposition to Defendants' Motion to Dismiss at 23-26. Rather, Brian's claim is one for a contractual right to seek and assume a variety of duties, which could include coaching or any other extracurricular activity. *Id.* According to Brian, he is entitled to seek these extra duties – which would result in salary increases – under his employment contract and the collective bargaining agreement. *Id.* Brian alleges that he has been deprived of seeking and assuming these additional duties because defendants unjustly put him on probation for three years, placed a non-favorable evaluation in his personnel file, and falsely accused him of sexually harassing a fellow employee. *Id.* Considering all the facts alleged in the complaint as true, and construing the pleadings in the light most favorable to the plaintiff, the court determines that Brian has properly alleged that defendants deprived him of a property interest in violation of his due process rights. As a result, defendants' motion to dismiss, with respect to this claim, should be denied.

### *B. Substantive Due Process*

To establish a substantive due process claim, the plaintiff must show that the defendants' actions were "arbitrary or capricious." *Richmond v. Fowlkes,* 228 F.3d 854, 859 (8th Cir. 2000). To establish this, plaintiff must claim that the government's conduct either shocked the conscience or offended judicial notions of fairness or human dignity. *Costello v. Mitchell Public School Dist. 79,* 266 F.3d 916, 921 (8th Cir. 2001) (citations

omitted). Unjustifiable conduct by any government interest, which is intended to injure in some way, is the sort of official action most likely to rise to the conscience-shocking level. *County of Sacramento v. Lewis,* 523 U.S. 833, 849 (1998). However, conduct giving rise to a substantive due process claim need not necessarily have been undertaken with an intent to injure. *Id.*

Here, Brian alleges that defendants, without any justification and with intent to injure his reputation and deprive him of his right to obtain salary increases, accused him of sexually harassing a fellow employee. They put him on probation for three years, placed a non-favorable evaluation in his file, and made false comments about his professional performance to students, parents, and to other schools that sought to give him additional work opportunities. The court determines that defendants' conduct, if true, is the type of conduct that could be labeled as arbitrary or capricious.

In this case, Brian has properly alleged that defendants deprived him of his due process rights. In addition, Brian has also properly alleged that Westside, a political subdivision, can be held liable under § 1983 based on a policy or custom. See *Mettler,* 165 F.3d at 1204. Accordingly, defendants' motion to dismiss, with respect to this claim, should be denied.

### C. Qualified Immunity

In an effort to dismiss Brian's claim that defendants violated his due process rights (both substantive and procedural), Reznicek and Crook also contend that this claim should be dismissed because they are entitled to qualified immunity. The court, however, does not agree. Public officials are entitled to qualified immunity in suits against them in their individual capacity as long as their actions do not violate "clearly established statutory or

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an affirmative defense to be found in a motion to dismiss only when the immunity can be established on the face of the complaint. *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996).

The qualified immunity analysis is a two-step process. *Saucier v. Katz*, 593 U.S. 194, 200 (2001); *Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir. 1997). The threshold question is whether the plaintiff has alleged the violation of a constitutional right. *Id.* If so, the court determines whether or not that right was "clearly established" at the time of the alleged violation. *Id.* This is an objective standard and is to be applied to a particular defendant's conduct as a matter of law. *Id.* Qualified immunity is usually raised by a motion for summary judgment after a limited amount of discovery has been conducted to determine whether defendants acted objectively in a reasonable manner and whether a plaintiff's rights were clearly established at the time of the alleged deprivation. *Id.* Courts take a broad view of what constitutes "clearly established" under the qualified immunity analysis and the test will favor a plaintiff when the test is based solely on the allegations in the complaint. *Whisman*, 119 F.3d at 1309.

Having already determined that Brian has properly alleged: (1) the existence of a liberty interest in his name and reputation; (2) the existence of a property interest in the contractual terms of his employment contract with Westside; and (3) that defendants violated those interests, the court turns then to the question of whether those interests were clearly established. In other words, the court must determine whether the rights were clearly established at the time of the alleged deprivation such that a reasonable official

would understand his conduct was unlawful in the situation he confronted. See *Saucier*, 593 U.S. at 201. Here, Brian alleges that Reznicek and Crook, intentionally and without justification, accused him of sexually harassing a fellow employee, put him on probation for three years, placed a non-favorable evaluation in his file, and made false comments about his professional performance to students, parents, and to other schools that sought to give him additional work opportunities. Brian further alleges that these defendants committed these acts knowing that they were against Westside's policies and procedures and against the collective bargaining agreement, which also regulates the terms and conditions of Brian's employment. As a result, Brian has properly alleged facts that, if true, would serve as a bar to the defendants' affirmative defense of qualified immunity. At this early stage of the litigation, the defendants have not shown that they are entitled to qualified immunity for their alleged actions. Accordingly, the defendants' motion to dismiss, with respect to Brian's claim that they violated his due process rights, should be denied.

### D. Equal Protection Claim

"To state a prima facie claim under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must demonstrate that (1) he is otherwise similarly situated to members of the unprotected class; (2) he was treated differently from members of the unprotected class; and (3) the defendant acted with discriminatory intent." *Greer v. Amesqua*, 212 F.3d 358, 370 (8th Cir. 2000); *Johnson v. City of Minneapolis,* 152 F.3d 859, 862 (8th Cir. 1998).

In his complaint, Brian, a native of New Zealand, alleges that defendants have treated him in a discriminatory or unequal manner from other similarly situated American teachers and professional staff by refusing to allow him to coach. He also alleges that

Westside's officials have continually referred to his New Zealand speech and mannerisms as rude and sarcastic and that they have not made any attempts to become aware of his cultural background or the impact of that in his speech and mannerisms. Brian, however, does not provide any allegations as to who these other similarly situated American teachers are or how he is similarly situated to those American teachers. He does not allege with any degree of specificity when and how he was treated differently from those American teachers. In other words, Brian does not allege with any degree of specificity the circumstances that serve as basis for this claim. He does not indicate who, when, where or how is it that his claim arises. Thus, Brian fails to properly state a prima facie claim under the Equal Protection Clause of the Fourteenth Amendment. Consequently, defendants' motion to dismiss this claim should be granted. As previously stated, a complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal. *Briehl v. Gen. Motors Corp.,* 172 F.3d 623, 627 (8th Cir. 1999); see also *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir. 1990).

### *Claim for Tortious Interference with Business Relationship against Reznicek*

To maintain a tortious interference with a business relationship, the Nebraska Supreme Court has indicated that a plaintiff must allege: (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted. *Huff v. Swartz*, 258 Neb.820, 825, 606

N.W.2d 461, 465 (2000) (citation omitted). In *Huff*, the Nebraska Supreme Court noted that: "[t]he general rule is that a party cannot interfere with its own contract." *Id.* at 467-68. The court held "that in order to constitute actionable interference with an employment relationship, actions of a co-employee must be shown to have been committed in furtherance of some purpose other than the lawful purposes of the employer." *Id.* "If such interference is established, it must also be proved to be 'unjustified' in order to be actionable." *Id.*

In this case, Brian contends that he has properly made a claim against Reznicek for tortious interference with a business relationship. The court does not agree. As the defendants point out, Brian alleges that Reznicek, at all times relevant, was "acting under color of pretense, custom, and practice of state law and under [his] powers and governmental authority." See Plaintiff's Amended Complaint, Filing No. 15. Brian alleges that Reznicek's actions were consistent with the official policy or custom of Westside. *Id.* In fact, he alleges that "Reznicek's actions were approved and agreed to by . . . [Westside]." *Id.* at 22-23. Thus, he has failed to allege that Reznicek's actions were committed in furtherance of some purpose other than that of his employer. Therefore, he has failed to plead a necessary element of tortious interference. As previously stated, in the context of actions by a co-employee, a plaintiff must claim that the actions of a co-employee were committed in furtherance of some purpose other than the lawful purpose of the employer and that those actions were unjustified in order for the claim to be actionable. *Huff,* 606 N.W.2d at 467-68. Consequently, defendants' motion to dismiss this claim should be granted.

THEREFORE, IT IS ORDERED:

1. That defendants' motion to dismiss the plaintiff's complaint, filing no. 15, is granted, in part, and denied, in part. The defendants' motion is granted: (a) with respect to plaintiff's claim of Equal Protection under the Fourteenth Amendment; (b) with respect to plaintiff's claim of violation of civil rights under Nebraska law; and (c) with respect to plaintiff's claim for tortious interference with a business relationship against Reznicek. The defendants' motion, however, is denied in all other respects.

2. That defendant's motion to dismiss the plaintiff's original complaint, filing no. 6, is now rendered moot.

DATED this 14th day of August, 2006.

BY THE COURT:

s/Joseph F. Bataillon
Chief Judge, United States District Court